UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LAYNE A. LINDBERG,<br>BARBARA J. LINDBERG,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MR. JAMES DIMON, Chairman and<br>Executive Officer JP Morgan Chase<br>Bank, National Association;<br>ATTORNEY DAVID C. PIPER #4128,<br>Mackoff Kellogg Law Firm;<br>MR. ANDREW J. CECERE, President<br>and Director US Bank National<br>Association; MR. JAY BRAY, President,<br>Chief Executive Officer & Chairman<br>Nationstar Mortgage LLC, d/b/a Mr.<br>Cooper; JPMORGAN CHASE BANK<br>NATIONAL; US BANK NATIONAL<br>ASSOCIATION; and NATIONSTAR<br>MORTGAGE LLC d/b/a MR. COOPER,<br><br>        Defendants. | CIV. 17-5089-JLV<br><br>AMENDED ORDER |

**INTRODUCTION**

This case arose from a real estate transaction. Plaintiffs Layne and

Barbara Lindberg leased a house in foreclosure proceedings in Rapid City, South

Dakota, from Lyle DuVall. Plaintiffs unsuccessfully attempted to negotiate a

short sale with DuVall and defendant JP Morgan Chase Bank, N.A. ("JP

Morgan"). JP Morgan foreclosed on the home and assigned the judgment of

foreclosure to defendant Nationstar Mortgage, LLC ("Nationstar"), which then

assigned it to defendant U.S. Bank, N.A. ("U.S. Bank"). Plaintiffs, appearing *pro*

*se*, brought this suit against the bank defendants and their chief executive officers, James Dimon, Jay Bray, and Andrew Cecere, alleging breach of contract and various torts. Plaintiffs also named David Piper, JP Morgan's local counsel, as a defendant. Now pending before the court are defendants' seven motions to dismiss plaintiffs' original and first amended complaint, along with defendant Piper's motion to strike plaintiffs' first amended complaint. (Dockets 9, 12, 13, 18, 25, 26, 30 & 34).

The court referred the pending motions to Magistrate Judge Veronica L. Duffy pursuant to the court's standing order of October 16, 2014, and 28 U.S.C. § 636(b)(1) for a report and recommendation ("R&R"). (Docket 40). The magistrate judge issued an R&R concluding defendant Piper's motion to strike the first amended complaint should be denied but the motions to dismiss should all be granted. (Docket 41). Plaintiffs timely objected to the R&R and the bank defendants filed responses to the objections.[1] (Dockets 42, 43 & 44). In their objections, plaintiffs ask the court to permit them to again amend their

---

[1]Defendants Dimon and JP Morgan move to join defendants Bray, Cecere, Nationstar and U.S. Bank's response to the plaintiffs' objections. (Docket 45). The motion is granted.

complaint.   (Docket 42 at p. 15).   Plaintiffs further filed a response to defendants' responses.[2]   (Docket 48).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   Id.   The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   Id.   For the reasons given below, the court denies defendant Piper's motion to strike the first amended complaint and grants each of the pending motions to dismiss.   The court further denies plaintiffs' motion to again amend their complaint.   The court adopts the R&R in full.

## ANALYSIS

### I.   Facts

The plaintiffs did not object to the magistrate judge's factual findings. The court adopts those findings in full.   (Docket 41 at pp. 2-11).   Here, the court need only set forth facts applicable to the plaintiffs' sole legal

---

[2]Plaintiffs' response is dated March 22, 2019, and was hand-delivered to the Clerk of Court to file on that date.   The response was officially filed on March 25, which is the date the court became aware of it.   (Docket 48).   The court's original order was filed prior to the filing of plaintiffs' response and did not take the response into account.   The response is not authorized by Federal Rule of Civil Procedure 72 or by any order of this court.   Nevertheless, because of plaintiffs' pro se status, the court reviewed the response and issues this amended order.   Plaintiffs' response is a restatement of the same positions they took in their own objections to the report and recommendation.   Compare Docket 48 with Docket 42.   It does not provide any new information which affects the court's resolution of the pending motions.

objection—whether the magistrate judge erred in concluding no contract existed between plaintiffs and any defendant. Because this matter is at the motion to dismiss stage, the court takes plaintiffs' "well-pleaded factual allegations" as true but does not give their legal conclusions "the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Plaintiffs leased the Rapid City house in April of 2012 from DuVall for $2,000 per month in rent. (Docket 22 at ¶¶ 9-10). Plaintiffs also agreed to purchase the property for $305,000, subject to JP Morgan's approval. Id. Plaintiffs then offered to purchase the property as a short sale for $403,000.[3] Id. at ¶ 13. In their objections to the R&R, plaintiffs state they signed a contract with DuVall on May 14, 2012, to purchase the property for $403,000 "contingent on approval of short sale from JP Morgan." (Docket 42 at p. 3). Plaintiffs secured the contract with $1,000 in earnest money, deposited with Pennington Title Company. Id. This contract is not in the record.[4]

---

[3]A short sale occurs when a debtor agrees to sell real estate to a buyer for less than the debt owed on the property. The creditor must agree to the lesser amount. (Docket 41 at p. 3).

[4]Plaintiffs appear to believe the magistrate judge and this court have access to pleadings filed in South Dakota state court. (Docket 42 at p. 3) ("Please review the exhibits to the State Complaint dated July 12th, 2016."). This is not the case. When the magistrate judge referred to state court pleadings, she meant only documents the parties filed in this case. (Docket 41 at p. 2). ("The court also takes judicial notice of pleadings filed in South Dakota state court *which the parties have placed into this record . . . .*") (emphasis added). She did not make her recommendations based on unspecified state court pleadings. However, even accepting all the factual allegations in plaintiffs' objections as true, they never formed a contract with any defendants. See infra Section III.B. The court accordingly will not permit plaintiffs to supplement the record with any additional state court pleadings.

JP Morgan refused plaintiffs' $403,000 short sale offer. (Docket 22 at ¶ 13). JP Morgan then offered to sell the property for $456,487, plus the cost of repairs (which the plaintiffs estimate as more than $133,000). Id. at ¶ 15. Plaintiffs found this offer "ridiculous, offensive and unacceptable." Id. In their objections, plaintiffs state this offer was made on July 14, 2012. (Docket 42 at p. 3). Despite this, plaintiffs state "all parties signed" the offer and that it constituted an "original binding contract." Id. at pp. 3-4. However, they also characterize the July 14 document as an amendment to the May 14 "original signed and accepted sales contract between all parties." Id. at p. 4. The July 14 document is also not in the record.

On February 11, 2013, JP Morgan sent a letter to DuVall stating it approved a short sale between him and plaintiffs. (Docket 28-2). The letter states JP Morgan will accept "a minimum of $403,866.12 to release the . . . mortgage lien and waive any deficiency so you will owe nothing more on this mortgage." Id. JP Morgan required "payment in certified funds on or before" March 4, 2013, or the offer would become "null and void." Id. Also required was a "signed agreement of sale . . . received before the foreclosure sale date." Id. The letter further stated the "acceptance is only for the contract sale price of

$456,000 between Layne A. Lindberg and Barbara J. Lindberg" and DuVall.[5] Id. Only the first page of the letter is in the record. Id.

The magistrate judge noted plaintiffs never asserted they paid anything or gave a signed sale agreement to JP Morgan. (Docket 41 at p. 27). Plaintiffs do not make those assertions in their objections. Instead, they argue "the short sale could not be closed" because of DuVall's bankruptcy proceedings. (Docket 42 at p. 5). They nevertheless assert they have a contract with JP Morgan. Id. at pp. 3-4.

## II. Plaintiffs' Objection & Motion to Amend Complaint[6]

Plaintiffs' sole "specific and" discernable objection to the R&R alleges the magistrate judge erred by determining they did not have a contract with JP Morgan. (Docket 42 at pp. 2-8). Plaintiffs contend their allegation a contract existed is a factual statement which must be taken as true. Id. at p. 7. They also ask the court to permit them to file a new amended complaint. Id. at p. 15.

---

[5]The magistrate judge noted the parties did not explain the discrepancy between the two prices named in the February 11 letter. (Docket 41 at p. 6 n.3). The court interprets the letter to offer JP Morgan's acceptance of a short sale contract in the amount of $403,866.12. The $456,000 price at the end of the letter's first page appears to refer to JP Morgan's July 14, 2012, offer. Given plaintiffs' insistence the February 11 letter continued negotiations from May and June of 2012, the court construes the latter price reference in the letter as acknowledging prior offers, rather than establishing a separate price.

[6]No defendant objected to the R&R. The court accordingly accepts the magistrate judge's well-reasoned recommendation that defendant Piper's motion to strike plaintiffs' first amended complaint be denied and defendants JP Morgan and Dimon's objection to the first amended complaint be overruled. (Docket 41 at pp. 11-13).

Plaintiffs notably do not "specifically" object to the magistrate judge's recommendations that their claims against the individual defendants be dismissed for lack of personal jurisdiction or that their tort claims be dismissed for failure to state a claim upon which relief can be granted. (Docket 42 at pp. 13-22, 30-41). The court adopts the magistrate judge's thorough reasoning on those points and accepts her recommendations. The court will only review the R&R's treatment of plaintiffs' breach of contract claim. The court then turns to plaintiffs' request to amend their complaint.

## III. Discussion

This case is before the court on its diversity jurisdiction. (Docket 22 at pp. 1-3). Accordingly, South Dakota substantive law governs plaintiffs' breach of contract claim. Hammons v. Hartford Fire Ins. Co., 501 F.3d 991, 996 n.6 (8th Cir. 2007).

### A. Rule 12(b)(6) legal standards

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Two "working principles" underlie Rule 12(b)(6) analysis. See Iqbal, 556 U.S. at 678. First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint. See id. "[A] complaint must allege 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017) (quoting Twombly,

550 U.S. at 555).   The court does, however, "take the plaintiff's factual allegations as true."   Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).   Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   Iqbal, 556 U.S. at 678 (citation omitted).   The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."   Braden, 588 F.3d at 594.   The court "will not mine a lengthy complaint searching for nuggets that might refute obvious pleading deficiencies."   Neubauer v. FedEx Corp., 849 F.3d 400, 404 (8th Cir. 2017) (quotations omitted).

In applying these principles, the court must construe plaintiffs' *pro se* complaint liberally.   See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."   Jackson v. Nixon, 747 F.3d 537, 544 (8th Cir. 2014) (internal quotation marks omitted).   The complaint "still must allege sufficient facts to support the claims advanced."   Stone, 364 F.3d at 914.

## B. Breach of contract objection

The only issue before the court is whether the magistrate judge erred in recommending plaintiffs' breach of contract claim be dismissed.   At the outset, the court notes the existence of a contract is not a factual allegation the court

must accept as true merely because plaintiffs pled it.   In South Dakota, "[t]he existence of a contract is a question of law."   <u>Harvey v. Reg'l. Health Network, Inc.</u>, 906 N.W.2d 382, 398 (S.D. 2018).   Without an existing contract, there can be no breach of contract.   <u>Bowes Constr. v. S.D. Dep't. of Transp.</u>, 793 N.W.2d 36, 43 (S.D. 2010) (listing the existence of "an enforceable promise" as an element of breach of contract).   The court must determine whether plaintiffs' factual allegations "plausibly give rise" to the conclusion a contract existed. <u>Iqbal</u>, 556 U.S. at 679.

South Dakota law lists four essential elements of a contract: parties capable of contracting, their consent, a lawful object, and sufficient cause or consideration.   SDCL § 53-1-2.   At issue here is whether JP Morgan consented to the short sale agreement between plaintiffs and DuVall.   "Consent of the parties to a contract must be: (1) Free; (2) Mutual; and (3) Communicated by each to the other."   <u>Id.</u> at § 53-3-1.   "Consent is not mutual unless the parties all agree upon the same thing in the same sense."   <u>Id.</u> at § 53-3-3.   "There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract."   <u>Winegeart v. Winegeart</u>, 910 N.W.2d 906, 911 (S.D. 2018) (quotation omitted).

Plaintiffs assert they had a short sale contract for $403,000 with DuVall dated May 14, 2012, that was "contingent on approval of short sale from JP Morgan."   (Docket 42 at p. 3).   On July 14, JP Morgan offered its approval of the contract for a price of $456,500.   <u>Id.</u>   In their first amended complaint,

9

plaintiffs state they found this offer "ridiculous, offensive and unacceptable." (Docket 22 at ¶ 15). In their objections, however, they contend "all parties signed" this offer but that they and JP Morgan "continued to negotiate the solid value" of the offer. (Docket 42 at p. 3). Neither the May 14 nor the July 14 documents are in the record. Plaintiffs next contend the February 11, 2013, letter from JP Morgan to DuVall constitutes "final approval" from JP Morgan to "close on the contract." Id. at p. 4. In plaintiffs' view, these three documents constitute a binding contract that JP Morgan breached.

Even accepting these facts as true, plaintiffs fall short of establishing JP Morgan consented to a contract. The February 11 letter shows JP Morgan offered to approve a short sale contract between plaintiffs and DuVall subject to two conditions: receipt of $403,866.12 in certified funds before March 4, 2013, and receipt of a signed agreement of sale before the foreclosure sale. (Docket 28-2). Plaintiffs admit the February 11 letter was the "final approval . . . to close on the contract" but do not allege they fulfilled the conditions set forth in that letter. (Docket 42 at p. 4). Their assertions the May 14 and July 14 documents form a binding contract are implausible because the February 11 letter states JP Morgan will only approve the short sale contingent on satisfaction of the two conditions. Plaintiffs do not explain why JP Morgan set these two conditions for its approval if it already approved a previous short sale contract. These "facts do not permit the court to infer more than the mere possibility," if that, of JP Morgan's consent. Iqbal, 556 U.S. at 679.

The court concludes plaintiffs have not alleged facts to support a plausible claim they had a binding short sale contract with JP Morgan. There can be no breach of contract in the absence of a contract. Accordingly, the magistrate judge did not err in recommending dismissal of plaintiffs' breach of contract claim. Plaintiffs' objection is overruled.

### C. Plaintiffs' motion to amend the complaint

In their objections, plaintiffs ask to amend their complaint in response to the R&R. (Docket 42 at p. 15). The bank defendants oppose the request because plaintiffs "already amended and still do not state a claim." (Docket 43 at p. 6). The court agrees with defendants that further amendment would be futile.

Federal Rule of Civil Procedure 15(a)(2) requires plaintiffs to seek "the opposing party's written consent or the court's leave" where, as here, they may not amend their complaint as a matter of right. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id.

> But parties do not have an absolute right to amend their pleadings, even under this liberal standard. A district court appropriately denies the movant leave to amend if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.

Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008) (quotations and citations omitted). "Duplicative and frivolous claims are futile." Reuter v. Jax Ltd., Inc., 711 F.3d 918, 922 (8th Cir. 2013). "[A]ny party moving to amend

a pleading must attach a copy of the proposed amended pleading to its motion to amend[.]"   D.S.D. Civ. LR 15.1.

As an initial matter, plaintiffs did not provide the court with their proposed amended complaint.   The court cannot determine with any specificity what plaintiffs propose to allege in their amended complaint.   This omission alone is sufficient grounds to deny plaintiffs' request.   Noble v. Am. Nat'l. Prop. & Cas. Ins. Co., 297 F. Supp. 3d 998, 1007 n.3 (D.S.D. 2018).

Even were the court to consider the request on its merits, further amendment would be futile.   Plaintiffs indicate they wish to amend their complaint "in light of any deficiencies the Court finds in the Lindbergs (sic.) pleadings[.]"   (Docket 42 at p. 18).   The deficiency is the lack of a contract between plaintiffs and JP Morgan.   The R&R explicitly stated plaintiffs' breach of contract claim failed because plaintiffs failed to allege they fulfilled the conditions set forth in JP Morgan's February 11 offer letter.   (Docket 41 at pp. 25-29).   Plaintiffs engage with this conclusion in their objections but fail to state they accepted JP Morgan's offer by fulfilling its conditions.   (Docket 42 at pp. 2-6).   There is no reason to suppose plaintiffs' amendment will cure this deficiency any more than did their objections to the R&R.   Further amendment of the complaint would be futile.   The court denies plaintiffs' request to amend their complaint.

**ORDER**

For the reasons given above, it is

ORDERED that plaintiffs' objection to the report and recommendation (Docket 42) is overruled.

IT IS FURTHER ORDERED that plaintiffs' request to amend their complaint (Docket 42) is denied.

IT IS FURTHER ORDERED that the report and recommendation (Docket 41) is adopted in full.

IT IS FURTHER ORDERED that defendants JP Morgan and Dimon's motion to join defendants Bray, Cecere, Nationstar and U.S. Bank's response to plaintiffs' objections to the report and recommendation (Docket 45) is granted.

IT IS FURTHER ORDERED that defendant Piper's motion to strike the first amended complaint (Docket 34) is denied.

IT IS FURTHER ORDERED that defendants JP Morgan and Dimon's objection to the first amended complaint (Docket 27) is overruled.

IT IS FURTHER ORDERED that the motions to dismiss filed by defendants Piper, Dimon, JP Morgan, Bray, Cecere, Nationwide and U.S. Bank (Dockets 9, 12, 13, 18, 25, 26, & 30) are granted.

IT IS FURTHER ORDERED that plaintiffs' complaint and first amended complaint (Dockets 1 & 22) are dismissed with prejudice.

Dated March 27, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE